Doc Anthony Anderson III (SBN 175000)
Law Offices of Doc Anthony Anderson III
402 West Broadway, Suite 400
San Diego, CA 92101
Telephone (619) 615-6580
Facsimile (619) 615-6582
E-Mail ShaftSavr@aol.com

Attorney for Plaintiff Leticia Navarro

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA NAVARRO, | Case No.: **3:18-cv-2908-BEN-NLS** |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES FOR RACIAL/SEX DISCRIMINATION AND DENIAL OF EQUAL RIGHTS UNDER THE LAW; RETALIATION-PRIOR EEO ACTIVITY** |
| JAMES M. MURRAY, SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | **JURY DEMAND** |
| Defendant. | |

Plaintiff files this first amended complaint, demands a jury trial and alleges as follows:

## I.

## GENERAL

1.   This civil action is seeking, equitable, monetary and such other relief as will redress past deprivation, discrimination and other causes of action as against Defendant James M. Murray, Secretary, United States Department of Homeland Security (hereinafter "Defendant") and his agents and/or employees in violation of law, statute,

ordinance, regulation, custom and usage of rights, privileges and immunities secured to Plaintiff Leticia Navarro (hereinafter "Plaintiff") by the United States Constitution, amendments thereto, federal statutes and the common law as appear more fully hereinafter.

2.      Plaintiff is a Hispanic American (Mexican Descent) female who is a member of a protected class.  Plaintiff is also a citizen of the United States of America and a resident of Imperial County, State of California.

3.      Plaintiff at the time of the writing of this complaint and during other times mentioned herein, is employed as Group Supervisor, GS-1811-14 with Defendant, Immigration and Customs Enforcement, Department of Homeland Security (ICE).

4.      The United States Department of Homeland Security (DHS) is a cabinet department of the U.S. federal government with responsibilities in public security, roughly comparable to the interior or home ministries of other countries.  Its stated missions involve anti-terrorism, border security, immigration and customs, cyber security, and disaster prevention and management.  It was created in response to the September 11 attacks and is the youngest U.S. cabinet department.  DHS, with more than 240,000 employees, which 5 or more employees were working 20 or more calendar weeks in the year of, or preceding, the filing of the original and this amended complaint. At all relevant times mentioned herein, DHS is and was engaged in an industry affecting intra and interstate commerce and was and is a public entity organized and existing under the laws of the Unites States of America.

5. All conditions precedent to jurisdiction have occurred or have been complied with, to wit: Plaintiff filed a formal charge of discrimination on or about July 30, 2012 with her agency's Equal Employment Opportunity Office.  Plaintiff's charge of discrimination was subsequently denied and Plaintiff subsequently appealed with the Equal Employment Opportunity Commission (EEOC) on December 19, 2016. The EEOC confirmed the denial of Plaintiff's charge of discrimination in a decision rendered on or about October 18, 2018 (attached and incorporated as Exhibit "A") was received from by

Plaintiff, on or about October 23, 2018, filed the original complaint which was filed within 90 days of receipt of the EEOC's decision. Service have been affected by the EEOC decision which is attached and incorporated hereto as exhibit "A." Plaintiff's actions stated herein constitute the completion of the general claim's presentation requirements, "which are to give the public entity an opportunity to settle a claim before suit is brought, to permit early investigation of the facts, to facilitate fiscal planning for potential liabilities, and to avoid similarly caused injuries or liabilities in the future."

6.     Plaintiff is informed and believe and therefore alleges that at all times mentioned herein, Defendant's agents, servants and/or employees as herein described, in doing the acts herein alleged, were acting within the course and scope of their employment and with the permission, consent and authority of Defendant; and all is responsible in some manner for the occurrences hereinafter alleged; and Plaintiff's injuries were proximately caused by the actions of each.

## II.
## FACTUAL ALLEGATIONS

7.     Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 6, inclusive, as though fully set forth at length herein.

8.     Plaintiff has been employed with ICE exceeding 20 years, cumulating in her current assignment as Group Supervisor, GS-1811-14 with ICE.

9.     During the entire period mentioned concerning her employment with ICE, and at all times relevant thereto, Plaintiff conducted herself in accordance with all legal policies and procedures as required by ICE, its employees, its managerial staff, and agents while performing her duties and responsibilities in a proper and exemplary manner.

10.    At no time during Plaintiff's employment with ICE were there any complaints resulting in disciplinary action by ICE concerning her job performance. On the contrary, Plaintiff received excellent performance evaluations and performance commendations.

11.   Other commendation and distinctions, although not all inclusive, achieved by Plaintiff beyond normal responsibilities during her employment with ICE include the following:

    a.   Supervised State and Federal Title III (OCEDTF) wire investigations;

    b.   Created and supervised the first child Exploitation Investigation Group for her office/ department;

    c.   Created and supervised the first computer forensic programs for her office/department;

    d.   Led and supervised the first worksite enforcement operation within her Area of Operation for ICE;

    e.   Initiated and coordinated the first in house special agent training program related to the conduct of interviews and interrogation techniques;

    f.   Initiated and launched a community outreach program for internet awareness for the local community and schools;

    g.   Selected to lead large scale multi-agency and multi-jurisdictional enforcement operations;

    h.   Received "Women of the Year" award in 2006 for charity work performed in the local community;

    i.   Received twelve (12) special act awards for merit and job performance from 1999 through 2012;

    j.   Received "Citizen of the Year" award for community outreach and community service presented by the El Centro Center for Family Solutions;

    k.   Recognized and nominated for the "WIFLE" award for outstanding performance as a Special Agent within ICE.

    l.   Created and supervised the first tunnel group for her office/ department.

12.   On or about May 15, 2012, a "Merit Promotion Opportunity" was announced within ICE concerning an "ICE Supervisory GS-1811-15," Category Rating

Announcement that was scheduled to open May 1, 2012 through May 14, 2012. The announcement specifically noticed how applicants would be evaluated.

13. Thereafter, a job announcement was circulated (Job Announcement Number DAL-INV-617831-MP-KLM) announcing the opening and request for applications for the "ICE Supervisory GS-1811-15," for Calexico, California. Again, the announcement specifically noticed how applicants would be evaluated.

14. Plaintiff's third line supervisor, was the "Selecting Official" for the position. Plaintiff is informed and believes that her third line supervisor, through his contacts and friends selected a biased panel of three (3) individuals within the ICE organization to rank and assess applicants for the position. The panel members were not given specific instructions related to how to rank and/or assess the applicants, although they were to use seven (7) questions developed by Plaintiff's third line supervisor and the panel members conducting the interview of prospective applicants. Plaintiff is informed and believes the panel ignored the specific instructions on how to evaluate candidates as provided in the official job announcement(s). It is also, allegedly, that the panel members were to use the applicants resumes to complete their assessment and ranking of the applicants.

15. Plaintiff along with six (6) other individuals applied for and were interviewed for the position. Plaintiff was the only female applicant for the position.

16. Plaintiff was a non-select for the position while the individual selected for the position was male.

17. During the time that the opening for the position was announced, the current individual holding the position, although reaching mandatory retirement, strongly recommended and made it known that Plaintiff would be acting in his stead on an interim basis until the position was filled on a permanent basis. Specifically, the retiring official made it known that it was his opinion that Plaintiff was the most qualified individual to serve in the position. Also, it is significant to note that Plaintiff had on a number of occasions acted and served in the capacity as the supervisor of the department at the request and approval of the retiring official.

18.   Once the retiring official actually retired, ignoring the opinion and recommendation of the retiring official, Plaintiff was removed from the position as acting supervisor of her department.

19.   Plaintiff had been associated with past/prior EEO activity within her department.  This past/prior EEO consisted of filing grievances and pursuing remedies for acts she reasonably believed violated constitutional matters and other protective activities involving individuals associated with the Defendant, including agents and employees of Defendant that were in Plaintiff's supervisory chain of command and those that worked in Plaintiff's place of employment.  Plaintiff is informed and believes these individuals, agents and employees of Defendant, including Plaintiff's supervisory chain of command and those that worked in Plaintiff's place of employment, were well aware and knowledgeable of Plaintiff's past/prior EEO activity, especially those involved in selection panel wherein she was denied the promotion opportunity as described herein, and were the main individuals involved in the past/prior EEO activity complained of by Plaintiff.

## III.

### FIRST CAUSE OF ACTION

### RACIAL DISCRIMINATION AND DENIAL OF EQUAL RIGHTS UNDER THE LAW

[Title VII of the Civil Rights Act of 1964, as amended]

20.   Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 19, inclusive, as though fully set forth at length herein.

21.   Title VII makes it an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race and/or sex.

///////

////////

22.   In general, actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such action was based upon race and/or sex or another impermissible criterion.

23.   Plaintiff herein allege that the facts will prove and evidence a case of racial/gender discrimination in the failure to promote context, as herein alleged, such that she was a member of a protected class; she applied for and was qualified for the position as noted herein and above; and she was rejected for that position; and the position was filled by someone from outside of her protected class; and any reason(s), if any, offered by the Defendants for Plaintiff's non-select for the position will be merely a pretext for discrimination.

24.   In other words Plaintiff, a Hispanic American (Mexican Descent) female employee, was treated in a disparate manner and subjected to Defendant, its agents and servants, to unfair policies, practices and acts of discrimination in that Plaintiff was treated unequal and unlike other employees similarly situated in employment with Plaintiff.  Said unfair policies, practices and discriminatory acts have limited Plaintiff in her ability to perform her profession as it relates to job classification, job assignments, wages and other benefits and have precluded and prevented Plaintiff from employment opportunities within ICE, and possibly other employers.

25.   Defendant, through its employees, agents and servants, including Plaintiff's supervisory chain of command, participated in, and/or knew of, if not ratified the unfair policies, practices and acts of discrimination regarding Plaintiff, thus exhibiting disparate discriminatory treatment in the terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

26.   Plaintiff believes and alleges that her race and sex was a substantial and determining factor in the discriminatory conduct and practices and disparate treatment described herein and above, and was implemented by Defendant's employees, agents and servants, with the full knowledge and ratification of Defendant, and was done purposefully to discriminate against Plaintiff because of her race and/or sex and/or

gender.  Plaintiff is informed and believes and herein alleges, it was Defendant's agents and employees, especially Plaintiff's supervisory chain of command and those on the selection panel desire and demonstrated motivation to place a male in the position in which Plaintiff was a non-select.

27.    The unfair policies, practices and acts of discrimination regarding Plaintiff by Defendant, through the acts and conduct of its employees, agents and servants, including Plaintiff's supervisory chain of command, exhibited disparate discriminatory treatment in the terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, and constitute an unlawful employment practice which have caused and will continue to cause Plaintiff loss of employment benefits accruing to missed and denied employment opportunities; deprived Plaintiff of income in the form of wages and prospective retirement benefits, social security and other benefits due her as an employee; and was all done solely because of her race, sex and/or gender.

28.    The effect of the policies and practices pursued by the Defendant, as alleged herein and above has been and continues to limit, classify, and discriminate against Plaintiff in ways which deprived her of job and employment opportunities and otherwise adversely affects Plaintiff's status as an employee because of her sex, race and/or gender in a sum to be proven at trial, but in excess of $500,000.00.

29.    As a further proximate result of the unlawful and intentional discriminatory actions and disparate treatment against Plaintiff, Defendant, acting through its employees, agents and servants, have caused Plaintiff to suffer substantial intangible losses and have caused Plaintiff to suffer and continue to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount to be proven at trial but in excess of $500,000.00.

30.    The Defendant, have unlawfully discriminated against Plaintiff by refusing to offer and/or denied Plaintiff equal pay for equal work for a position for which she was

///////

qualified; failing to remedy discriminatory practices of its supervisory personnel; and otherwise discriminating against Plaintiff on the basis of her race, sex and/or gender.

### IV.

## SECOND CAUSE OF ACTION

### RETALIATION - PRIOR EEO ACTIVITY

[Title VII of the Civil Rights Act of 1964, as amended]

31.     Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 30, inclusive, as though fully set forth at length herein.

32.     Title VII makes it unlawful for an employer to discriminate against any of its employees or applicants for employment because he/she has opposed any practice made an unlawful employment practice by this subchapter.  To make out a prima facie case of Title VII retaliation, an employee must show that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action.  Title VII retaliation claims must be proved according to traditional principles of but-for causation.  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.

33.     Plaintiff herein alleges that before she was denied the promotion, she had been associated with past/prior EEO activity within her department for acts she reasonably believed violated constitutional matters and other protective activities, including EEO claims, involving her supervisory chain of command and others working in her department.  Plaintiff is informed and believes all were well aware and knowable of Plaintiff's past/prior EEO activity as alleged herein.

34.     As a result of this past/prior EEO activity, Plaintiff is informed and believes that not only the Defendant and her supervisory chain of command, removed her from the acting position granted her by then the retiring official as noted herein above, denied her the opportunity for advancement, most especially the opportunity to be selected for the position denied her as described herein and above.

35.    Defendant, its agents, employees and servants, including those in Plaintiffs supervisory chain of command, retaliatory actions against Plaintiff constitute unlawful retaliation in violation of the Civil Rights Act of 1964, as amended.

36.    As a direct and proximate result of Defendant's conduct, and the conduct of its employees, agents and servants, including Plaintiff's supervisory chain of command, as described herein, Plaintiff has been forced to retain attorneys and incur substantial costs and expenses, including consequential damages, to obtain relief from Defendant discriminatory conduct, and the discriminatory conduct of its employees, agents and servants, including Plaintiff's supervisory chain of command, which Plaintiff is entitled to be compensated in an amount to be established at trial but in excess of $500,000.00.

**WHEREFORE,** Plaintiff prays for judgement against Defendant as follows:

1.    For actual and compensatory damages against Defendants, including lost earnings, other employee benefits, past and future in a sum exceeding Five Hundred Thousand Dollars ($500,000.00) and/or in a sum subject to proof at the time of trial;

2.    For pre-judgment interest owed to Plaintiff pursuant to Statute and other applicable laws;

3.    For special and consequential damages in a sum in excess of Five Hundred Thousand Dollars ($500,000.00) and/or in a sum subject to proof at the time of trial;

4.    For cost of suit herein incurred, including reasonable attorney's fees and expert fees, pursuant to Title VII of the Civil Rights Act of 1964, as amended, and other applicable laws; and

6.    For such other and further relief as the Court deems proper.

DATED: May 19, 2019        **LAW OFFICES OF DOC ANTHONY ANDERSON III**


By: s/  Doc Anthony Anderson III
Doc Anthony Anderson III, Esq.
Attorney for Plaintiff

1

2

### **DEMAND FOR JURY TRIAL**

3

Pursuant to FRCP, Rule 38(b), Plaintiff hereby demands a jury trial.

DATED: May 19, 2019          **LAW OFFICES OF DOC ANTHONY ANDERSON III**

4

5

6

By: s/  Doc Anthony Anderson III

7

Doc Anthony Anderson III, Esq.

8

Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT

# "A"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Leticia Navarro, a/k/a
Allegra P.,[1]
Complainant,

v.

Kirstjen M. Nielsen,
Secretary,
Department of Homeland Security
(Immigration and Customs Enforcement),
Agency.

Appeal No. 0120170774
Hearing No. 480-2013-00603X
Agency No. HSICE224422012

## DECISION

On December 19, 2016, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's November 27, 2016, final order concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

## ISSUES PRESENTED

The issues presented are: (1) whether the AJ's issuance of a decision without a hearing was appropriate; and (2) whether Complainant established that the Agency discriminated against her on the bases of national origin (Hispanic), sex (female), and reprisal for prior protected EEO activity when:

1. On May 9, 2012, she was not selected for the position of Assistant Special Agent in Charge (ASAC), Calexico, California, GS-1811-15; and
2. On April 16, 2012, she was removed as Acting ASAC, Calexico, and denied further acting opportunities.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Group Supervisor GS14 at the Agency's U.S. Department of Homeland Security facility in Calexico, California. In 1998, Complainant began work as a criminal investigator for the Agency. She had various reassignments, including one in 2001 to the Agency's facility in Calexico, California. In 2004, the Agency promoted her to a GS-14 Group Supervisor position in Calexico, a position she held at all times relevant to this matter. While serving in the Group Supervisor position, she received positive performance reviews and multiple rewards.

Whenever Complainant's supervisor (S1) – who was the Assistant Special Agent in Charge (ASAC) in Calexico – was on leave, the supervisor appointed her to serve as the Acting ASAC. He chose Complainant for this acting role "due to her seniority, experience, management style, continuity, and good judgment," and because she "had the ability to work with all law enforcement agencies." Complainant stated that, for many years, her second-line supervisor, the Deputy SAC (S2) has taken almost every opportunity to reprimand, scold, and minimize Complainant. Complainant filed three prior EEO complaints against S2.

On March 7, 2012, Complainant applied for a vacant GS-15, ASAC position at the Calexico facility. After receiving automatically generated emails from the Agency, including one that Complainant found upsetting because she was notified that she was not qualified, Complainant was interviewed for the ASAC position.

For the interviews, the Special Agent in Charge (S3) appointed three panelists who interviewed Complainant and six other candidates. Complainant was rated much lower than C1 (male, Hispanic) who became the selectee for the position.

In another automatically generated email, on May 9, 2012, the Agency notified Complainant that she was not selected for the position. Complainant felt she should have gotten the job because she had more supervisory experience, more investigative experience, and a more varied investigative background. She alleged that the Agency discriminated against her based on her national origin and sex; that S3 had demonstrated animus towards her on other occasions; and that he was involved in the selection process. Therefore, the Agency's decision was in retaliation for her prior EEO activity. Complainant added that two of the three panelists had knowledge of her prior protected EEO activity.

S3 stated that he chose the selectee because the selectee was the highest ranked candidate, he was already in a GS-15 position, he served in leadership positions in headquarters for 2.5 years, and his responses focused on teamwork and communication. He further stated that he did not select Complainant because she was ranked fifth by the panelists, she lacked headquarters' experience, and she had no experience running an office in a permanent position. The Agency indicated that Complainant's prior EEO activity played no role in the selection decision. The record indicated that the panelists submitted their interview notes to S3, who was the selecting official. S3 reviewed those interview notes from all three panelists before deciding.

The record also indicated that S3 had made 14 selections in the prior two years. Of those 14 selections, six selectees were female (including one female ASAC in another office), and two selectees were Hispanic, in addition to the selectee in the instant matter.

Complainant alleged that, on April 16, 2012, three days after S1 retired, S3 removed her Acting ASAC duties. Complainant stated that prior to her most recent complaint to S1, S3 had decided on a succession plan that would include, among other arrangements, having someone from the San Diego office travel to the Calexico Office until the position was filled. Complainant alleged this plan deprived her of further Acting SAC opportunities. She maintained that she was treated less favorably because she is a Hispanic female, and that a less qualified male Hispanic Program Manager was allowed to be the Acting ASAC in the absence of S2 or S3.

S3 stated that he wanted himself and other managers unfamiliar with the Calexico office to have experience there while the position remained open.

On July 30, 2012, Complainant filed the instant EEO complaint alleging discrimination as set forth above. At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of her right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ).   Complainant timely requested a hearing. Over Complainant's objections, the AJ granted the Agency's January 7, 2014, motion for a decision without a hearing and issued a decision without a hearing on September 15, 2016. The Agency subsequently issued a final order adopting the AJ's finding that Complainant failed to prove that the Agency subjected her to discrimination as alleged.

## CONTENTIONS ON APPEAL

Complainant, among other things, contends she was subjected to disparate treatment based on her national origin, sex, and prior EEO activity when she was not selected for the ASAC position; and that she was singled out and discriminated against based on her protected classes when she was removed as Acting ASAC and denied further acting opportunities. Complainant asserts that the AJ erred in granting summary judgment in favor of the Agency; and that an evidentiary hearing is necessary to resolve her claims.

The Agency argues that Complainant did not substantiate her claims; and that the AJ did not err in granting summary judgment in its favor.

## STANDARD OF REVIEW

In rendering this appellate decision we must scrutinize the AJ's legal and factual conclusions, and the Agency's final order adopting them, de novo. See 29 C.F.R. § 1614.405(a) (stating that a "decision on an appeal from an Agency's final action shall be based on a de novo review . . ."); see also Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), Ch. 9, § VI.B (Aug. 5, 2015) (providing that an AJ's determination to issue a decision without a hearing, and the decision itself, will both be reviewed de novo).

4                                                          0120170774

This essentially means that we should look at this case with fresh eyes. In other words, we are free to accept (if accurate) or reject (if erroneous) the AJ's, and Agency's, factual conclusions and legal analysis – including on the ultimate fact of whether intentional discrimination occurred, and on the legal issue of whether any federal employment discrimination statute was violated. See EEO MD-110, Ch. 9, § VI.A. (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that the Commission "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

## ANALYSIS AND FINDINGS

We must first determine whether it was appropriate for the AJ to have issued a decision without a hearing on this record. The Commission's regulations allow an AJ to issue a decision without a hearing when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). This regulation is patterned after the summary judgment procedure set forth in Rule 56 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has held that summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, a court's function is not to weigh the evidence but rather to determine whether there are genuine issues for trial. Id. at 249. The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. Id. at 255. An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case.

If a case can only be resolved by weighing conflicting evidence, issuing a decision without holding a hearing is not appropriate. In the context of an administrative proceeding, an AJ may properly consider issuing a decision without holding a hearing only upon a determination that the record has been adequately developed for summary disposition. See Petty v. Dep't of Def., EEOC Appeal No. 01A24206 (July 11, 2003). Finally, an AJ should not rule in favor of one party without holding a hearing unless he or she ensures that the party opposing the ruling is given (1) ample notice of the proposal to issue a decision without a hearing, (2) a comprehensive statement of the allegedly undisputed material facts, (3) the opportunity to respond to such a statement, and (4) the chance to engage in discovery before responding, if necessary. According to the Supreme Court, Rule 56 itself precludes summary judgment "where the [party opposing summary judgment] has not had the opportunity to discover information that is essential to his opposition." Anderson, 477 U.S. at 250. In the hearing context, this means that the administrative judge must enable the parties to engage in the amount of discovery necessary to properly respond to any motion for a decision without a hearing. Cf. 29 C.F.R. § 1614.109(g)(2)

5                                    0120170774

(suggesting that an administrative judge could order discovery, if necessary, after receiving an opposition to a motion for a decision without a hearing).

Upon review of the record, we find that there are no genuine issues of material fact presented here. The record has been adequately developed, Complainant was given ample notice of the Agency's motion for a decision without a hearing, she was given a comprehensive statement of the allegedly undisputed material facts, she was given the opportunity to respond to such a statement, and she was given the chance to engage in discovery before responding, if necessary. We find that, even assuming all facts in favor of Complainant, a reasonable fact-finder could not find in her favor, as explained below. Therefore, we find that the AJ's issuance of a decision without a hearing was appropriate.

*Disparate Treatment*

To prevail in a disparate treatment claim, a complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Complainant must initially establish a prima facie case by demonstrating that she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Constr. Co. v. Waters, 438 U.S. 567, 576 (1978). Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 441 U.S. at 804 n.14. The burden then shifts to the Agency to articulate a legitimate, nondiscriminatory reason for its actions. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); St. Mary's Honor Ctr v. Hicks, 509 U.S. 502, 519 (1993).

Upon review of the record, we find that the Agency did not subject Complainant to disparate treatment on the bases of national origin, sex or reprisal for prior protected EEO activity when she was not selected for the Assistant Special Agent in Charge, GS-15, position for which she applied, and when she was removed as Acting ASAC and denied further acting opportunities.

Assuming, arguendo, that Complainant established a prima facie case of national origin, sex, and reprisal discrimination; we find that the Agency articulated legitimate, nondiscriminatory reasons for its actions. Although Complainant was qualified for the position as indicated by her experience as Acting ASAC, as well as S1's positive statements regarding her abilities and leadership skills, S3 maintained that the selectee was more qualified, however, because of his work in management at other locations in a GS-15 position, and that he had demonstrated more of the leadership, communication skills and experience the Agency sought. Complainant did not establish that her qualifications were plainly superior to those of the selectee. See Wasser v. Dep't of Labor, EEOC Request No. 05940058 (November 2, 1995); Bauer v. Baitar, 647 F.2d 1037, 1048 (10th Cir. 1981).

Complainant alleged she was not selected because she is a Hispanic female with prior EEO activity; and that the selectee is male without prior EEO activity. She also asserted that two of the panelists and S3 were aware of her prior EEO activity, and that their awareness as well as S3's involvement in the process played a role in the Agency selection decision. However, as the record indicates the selectee is also Hispanic; and there is no evidence that prior EEO activity or lack thereof of the candidates played any role in the final determination.

In an effort to show pretext, Complainant maintained that she was treated less favorably than other supervisors because of her protected classes. She cites to several events including not being allowed to represent her office when the Attorney General was visiting; being removed as Acting ASAC after S1 retired, and not being provided future acting opportunities. However, Complainant does not identify any comparator of a different national origin, sex or lack of prior EEO activity who received more favorable treatment than she did. Regarding the succession plan, S3 indicated that he wanted himself and other managers unfamiliar with the Calexico office to have experience there while the position remained open. Complainant did not establish by a preponderance of the evidence that this reason was a pretext. The Commission has long held that an Agency has broad discretion to set policies and carry out personnel decisions, and should not be second-guessed by the reviewing authority absent evidence of unlawful motivation. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 259; Vanek v. Dep't of the Treasury, EEOC Request Mo. 05940906 (January 16, 1997).

## CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final order finding that Complainant did not establish discrimination as alleged.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0617)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.   The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.   The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision. A party shall have twenty (20) calendar days of receipt of another party's timely request for reconsideration in which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110),

7                                             0120170774

at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission. Complainant's request may be submitted via regular mail to P.O. Box 77960, Washington, DC 20013, or by certified mail to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The agency's request must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

8                                          0120170774

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

October 18, 2018
Date

9                                                    0120170774

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to the following recipients on the date below:

Leticia Navarro
578 Sagebrush St.
Imperial, CA 92251

U.S. Department of Homeland Security
Office for Civil Rights and Civil Liberties
245 Murray Ln., SW Bldg. 410
Mail Stop 0191
Washington, DC 20528

Chief, Labor and Employment Law Division
U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor (MS 5900)
500 12th Street, SW
Washington, DC 20536

October 18, 2018
Date

Compliance and Control Division